IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-00198-MSK-MEH

SUN RIVER ENERGY, INC.,

    Plaintiff,

v.

ERIK S. NELSON,
STEVE STEPHENS, and
CORAL CAPITAL PARTNERS, INC.,

    Defendants.

## ORDER ON MOTION IN LIMINE AND MOTION TO SEAL

Before the Court are Plaintiff's Motion in Limine Regarding its Likely Use as Exhibits of Certain Emails Authored by Defendants at Hearing to Enforce Settlement Agreement [filed August 2, 2011; docket #102] and Plaintiff's Motion to File Exhibits Under Seal [filed August 2, 2011; docket #103]. The motion in limine is fully briefed and both motions have been referred to this Court for disposition [docket #112]. The Court finds that oral argument would not materially assist in the adjudication of these matters. For the reasons that follow, the motion in limine is **denied** and the motion to seal is **granted**.

### BACKGROUND

Plaintiff initiated this lawsuit in Denver County District Court on January 10, 2011. (Docket #1-1 at 2-9.) Defendants removed the case to this District on January 26, 2011, pursuant to diversity jurisdiction. (*See* docket #1.) The dispute arises from a contract-based business relationship in which Defendant Coral Capital accepted 150,000 shares of restricted common stock of Plaintiff as payment, in lieu of cash, for certain services rendered. (Docket #35 at 2-3.) Plaintiff and Defendant

Coral Capital entered into the contract on October 15, 2007; Plaintiff terminated the contract on April 24, 2008, effective April 30, 2008. (*Id*. at 2.) The 150,000 shares were issued on or about August 7, 2008, to Defendants Erik Nelson, the president of Coral Capital, and Steve Stephens, an employee of Coral Capital, in equal parts. (*Id*. at 2, 3.) Plaintiff alleges that Defendant Coral Capital failed to full perform its obligations under the October 15, 2007 contract, that consideration was not fully paid for the shares issued to Defendants Nelson and Stephens, and that Defendants Nelson and Stephens have forfeited their right to the shares based upon conduct concerning use and disclosure of material non-public information regarding Plaintiff. (*See id*. at 3.)

Plaintiff asserts that Defendants used material non-public information regarding Plaintiff to sell approximately 75,000 shares of Plaintiff's stock. (Docket #17 at 2.) Plaintiff explains that Defendants were under the obligations of confidentiality agreements concerning the material non-public information. (*Id*.) Plaintiff commenced this action after Defendants sold the 75,000 shares, when Defendants requested the removal of restrictive legends from the shares. (*Id*.)

Plaintiff brings five claims: 1) no duty to register transferred shares pursuant to Colo. Rev. Stat. § 4-8-401, as to Defendants Nelson and Stephens; 2) declaratory judgment pursuant to Colo. Rev. Stat. § 13-51-101 (regarding no duty to register or remove the restrictive legend from the shares, that Defendants have no right to the shares and must return the shares to Plaintiff, and that Defendants are obligated to pay Plaintiff's costs and fees); 3) breach of contract claim against Defendants Coral Capital and Nelson; 4) breach of fiduciary duty by Defendants Coral Capital and Nelson; and 5) injunctive relief precluding Defendants from selling the shares at issue. (*See* docket #35.)

Defendants answered Plaintiff's complaint on February 22, 2011, and asserted eight

counterclaims: 1) breach of contract; 2) violation of Colo. Rev. Stat. § 4-8-401 (regarding the registration of the transfer of Defendants' shares fee of any restrictive legend); 3) conversion; 4) civil theft; 5) tortious interference; 6) common law fraud; 7) breach of fiduciary duty to shareholders; and 8) declaratory judgment that Plaintiff must remove the restrictive legend and register the transfer of the shares at issue.  (*See* docket #11.)

On May 24, 2011, this Court held a Settlement Conference in this matter.  (Docket #77.) Although the case did not settle at that time, negotiations proceeded between the parties, and they informed the Court that they came to an agreement on May 31, 2011.  (Docket #84.)  However, on June 30, 2011, the Plaintiff filed a "notice" informing the Court that "Defendants have withdrawn from a previously agreed-upon settlement."  (Docket #89.)  The following day, the Plaintiff filed a Motion to Enforce Settlement Agreement, which remains pending and will be heard before this Court on August 22, 2011.  (Dockets #91 and #95.)

In anticipation of that hearing, Plaintiff has filed the present motion seeking the admission of two emails that have been characterized by Defendants as inadvertently disclosed and protected by the attorney-client privilege.  (*See* docket #102.)  Plaintiff argues that the emails – exchanged between defense counsel Gabe McFarland and Defendant Erik Nelson – do not contain advice or any information meant to be confidential.  Defendants oppose the motion contending that the emails reflect communications between an attorney and his client, imply a request for legal advice, and relate to confidential settlement negotiations.  The Court agrees with Defendants.

## **DISCUSSION**

In diversity jurisdiction cases such as this one, state law controls the issues of privilege raised by the parties.  *See* Fed. R. Evid. 501 (2008); *see also Trammel v. United States*, 445 U.S. 40, 47 n.8

(1980). Colorado courts interpreting Fed. R. Evid. 501 imply that the state law to apply is that which will likely supply the rule by which the case will be resolved. *See, e.g., Shriver v. Baskin-Robbins Ice Cream Co., Inc.*, 145 F.R.D. 112, 114 n. 1 (D. Colo. 1992). In this case, there is no stated dispute that Colorado law will govern.

In Colorado, the burden of establishing a waiver or an exception lies with the party seeking to overcome the privilege. *Wesp v. Everson,* 33 P.3d 191, 198 (Colo. 2001). However, before determining whether the privilege has been waived by disclosure, the Court must first determine whether the communications are protected by the attorney-client privilege.

Here, "the attorney-client privilege applies to confidential matters communicated by or to the client in the course of obtaining counsel, advice, or direction with respect to the client's rights or obligations." *People v. Trujillo*, 144 P.3d 539, 542 (Colo. 2006) (citing *People v. Madera,* 112 P.3d 688, 690 (Colo. 2005)). Statements of fact are not protected by the attorney-client privilege. *See Gordon v. Boyles,* 9 P.3d 1106, 1123 (Colo. 2000) (noting that "the privilege protects only the communications to the attorney; it does not protect any underlying and otherwise unprivileged facts that are incorporated into a client's communication to his attorney").

The Court finds that the email messages exchanged between Mr. McFarland and Mr. Nelson (and copied to Gerald Kline, consulting attorney for Defendants, and Plaintiff's counsel) are protected by the attorney-client privilege. While it may not explicitly ask for the attorney's advice, Mr. Nelson's message seeks direction from the attorney with respect to confidential settlement negotiations by expressing some thoughts and opinions about a settlement term and asking for a telephone call from the attorney. Likewise, the attorney's response to the client may not specifically *give* direction or advice, but it relates to the confidential communication and states an intent to

discuss any direction or advice. By specifically discussing issues related to the ongoing settlement negotiations, the Court finds that the emails, while not marked as such, were intended to be confidential.

Plaintiff contends that, because Mr. Nelson's email message contains non-confidential facts, the entire communication is not privileged. The Court disagrees. While some statements relaying "facts" may be contained in Mr. Nelson's message, they are expressed in terms of information underlying Mr. Nelson's opinions from which he seeks direction and, thus, do not constitute non-confidential facts exempted from the privilege. *See Gordon*, 9 P.3d at 1123 ("the attorney-client privilege protects not only information and advice communicated from the attorney to the client, but also information given to the attorney to enable him to give sound and informed legal advice"). Therefore, the Court concludes that the challenged email messages are protected by the attorney-client privilege.

Because Mr. Nelson and Mr. McFarland disclosed protected communications to opposing counsel, the Court must next determine whether the disclosures serve as waivers of the privilege. Colorado has codified the attorney-client privilege as follows:

> An attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment....

Colo. Rev. Stat. § 13-90-107(1)(b). Thus, the privilege is held by the client and may be waived only by the client. *Trujillo*, 144 P.3d at 542 (citing *Losavio v. Dist. Court,* 188 Colo. 127, 133, 533 P.2d 32, 35 (1975)). The authority to assert and waive a solvent corporation's attorney-client privilege rests with current management. *Genova v. Longs Peak Emergency Physicians, PC*, 72 P.3d 454, 462 (Colo. App. 2003) (citing *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 348

(1985)).

In this case, Mr. McFarland disclosed a communication that he, as the attorney, had with his client. In Colorado, Mr. McFarland is not authorized to waive his client's privilege. Therefore, the Court finds that Mr. McFarland cannot waive the privilege through his disclosure of the email message.

Mr. Nelson, however, may waive his privilege through disclosure of the communication to a third party. However, the Court finds the disclosure was inadvertent and does not serve as a waiver of the privilege.

Colorado courts have determined that, in those instances in which an alleged inadvertent disclosure has occurred during the course of judicial discovery proceedings, the most appropriate means to determine whether the disclosure should be considered a waiver of the attorney-client privilege is to "consider a number of factors to determine whether the disclosure resulted from excusable inadvertence or from some chargeable negligence or other fault." *Floyd v. Coors Brewing Co.,* 952 P.2d 797, 808-09 (Colo. App. 1997), *rev'd on other grounds,* 978 P.2d 663 (Colo. 1999). The court stated:

> Among the factors considered ... are: (1) the extent to which reasonable precautions were taken to prevent the disclosure of privileged information; (2) the number of inadvertent disclosures made in relation to the total number of documents produced; (3) the extent to which the disclosure, albeit inadvertent, has, nevertheless, caused such a lack of confidentiality that no meaningful confidentiality can be restored; (4) the extent to which the disclosing party has sought remedial measures in a timely fashion; and (5) considerations of fairness to both parties under the circumstances.

*Id.* at 809.

Here, the Court finds that consideration of a number of factors leads to the conclusion that Mr. Nelson's disclosure was inadvertent and cannot serve as a waiver. For example, with respect

to the disclosure itself, Defendants explain that Plaintiff's counsel's name, Steve Csajaghy, appeared on the email when Mr. Nelson initiated the "autofill" function intending to copy the message to co-Defendant Steve Stephens. Such mistake is understandable under the circumstances and clearly inadvertent.

With respect to remedial measures, Defendants have provided a copy of an email that Mr. McFarland sent to Plaintiff's counsel *one minute* after disclosure of his email to Mr. Nelson asking Mr. Csajaghy to "Please delete my previous message; it contains attorney client info." (*See* docket #114-1 at 2.) Seven minutes later, Mr. McFarland emailed Mr. Csajaghy again seeking deletion of Mr. Nelson's email as well. (*Id.* at 3.) Certainly, Defendants' remedial measures were taken in a timely manner. The Court notes also that only two email messages were disclosed among what appear to be several emails between the opposing parties concerning at least four drafts of the settlement agreement.

Finally, the Court finds that considerations of fairness weigh in favor of finding no waiver. Defendants clearly intended the emails to be confidential as communications between an attorney and client concerning settlement. There is no indication whatsoever that Defendants intended for Mr. Csajaghy to be a party to these communications. And, Defendants' subsequent email messages to Mr. Csajaghy suggest that he did not respond to immediate requests for deletion of the challenged emails even as late at twenty-four (24) hours after the first request (Defendants claim it was days later before receiving a response). Policy considerations and the interests of justice and fairness compel this Court to conclude that Mr. Nelson's disclosure of his email message addressed to Mr. McFarland was inadvertent and does not waive his attorney-client privilege. *See Gordon*, 9 P.3d at 1123 ("[t]he privilege is 'rooted in the principle that candid and open discussion by the client to

the attorney without fear of disclosure will promote the orderly administration of justice.'") (citations omitted).

## CONCLUSION

The Court concludes there was no waiver of the attorney-client privilege in this matter through the inadvertent disclosure of the protected communications. Accordingly, for the reasons stated above, the Court hereby ORDERS that the Plaintiff's Motion in Limine Regarding its Likely Use as Exhibits of Certain Emails Authored by Defendants at Hearing to Enforce Settlement Agreement [filed August 2, 2011; docket #102] is **denied**. Further, having no objection and on an appropriate showing, the Court ORDERS that Plaintiff's Motion to File Exhibits Under Seal [filed August 2, 2011; docket #103] is **granted**. The Clerk of the Court is directed to maintain under seal the documents found at docket #104 until further order of the Court.

Dated at Denver, Colorado, this 18th day of August, 2011.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge