IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-00198-MSK-MEH

SUN RIVER ENERGY, INC.,

      Plaintiff,

v.

ERIK S. NELSON,
STEVE STEPHENS, and
CORAL CAPITAL PARTNERS, INC.,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

      Before the Court is Defendants' Third Motion for Discovery Sanctions [filed December 17, 2012; docket #254]. In accordance with 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the matter is referred to this Court for recommendation [docket #255]. I held an evidentiary hearing on this motion on February 21, 2013. Based on the record contained herein, the Court respectfully RECOMMENDS that Defendants' motion be **granted** and default judgment be entered for Defendants on their counterclaims.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the

## BACKGROUND

Plaintiff initiated this lawsuit in Denver County District Court on January 10, 2011. Defendants removed the case to this District on January 26, 2011, pursuant to diversity jurisdiction. The dispute arises from a contract-based business relationship in which Defendant Coral Capital accepted 150,000 shares of restricted common stock of Plaintiff as payment, in lieu of cash, for certain services rendered.  Essentially, Plaintiff alleges that Coral Capital failed to fully perform its obligations under the October 15, 2007 contract, that consideration was not fully paid for the shares issued to Nelson and Stephens, and that Nelson and Stephens have forfeited their rights to the shares based upon conduct concerning use and disclosure of material non-public information regarding Plaintiff.

Plaintiff brought five claims: 1) no duty to register transferred shares pursuant to Colo. Rev. Stat. § 4-8-401, as to Defendants Nelson and Stephens; 2) declaratory judgment pursuant to Colo. Rev. Stat. § 13-51-101 (regarding no duty to register or remove the restrictive legend from the shares, that Defendants have no right to the shares and must return the shares to Plaintiff, and that Defendants are obligated to pay Plaintiff's costs and fees); 3) breach of contract claim against Defendants Coral Capital and Nelson; 4) breach of fiduciary duty by Defendants Coral Capital and Nelson; and 5) injunctive relief precluding Defendants from selling the shares at issue.

Defendants answered Plaintiff's complaint on February 22, 2011, and asserted eight counterclaims: 1) breach of contract; 2) violation of Colo. Rev. Stat. § 4-8-401 (regarding the registration of the transfer of Defendants' shares fee of any restrictive legend); 3) conversion; 4)

---

Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

civil theft; 5) tortious interference; 6) common law fraud; 7) breach of fiduciary duty to shareholders; and 8) declaratory judgment that Plaintiff must remove the restrictive legend and register the transfer of the shares at issue.

On May 24, 2011, this Court held a Settlement Conference in this matter.  (Docket #77.) Plaintiff did not bring any insurance adjustor to the Conference.  The case did not settle at that time, and, although the parties later informed the Court that they had settled the case on May 31, 2011, that settlement fell through, and the litigation resumed.  The continued litigation led to the following circumstances.

## FINDINGS OF FACT RELEVANT TO THE CURRENT MOTION

The current motion concerns Plaintiff's disclosure obligations regarding relevant insurance policies.  Plaintiff's initial disclosures, signed on April 4, 2011 by Stephen E. Csajaghy, counsel of record for Plaintiff at that time, stated, with regard to insurance, "Not Applicable."  Federal Rule of Civil Procedure 26(a)(1)(A)(iv) requires that a party *must* provide "for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment."  In supplemental disclosures filed April 19, 2011; April 26, 2011; and May 23, 2011, Plaintiff failed to reveal any insurance policies.

In fact, at the time of the initial disclosures, on April 4, 2011, Plaintiff had an active insurance policy titled, in bold lettering: "**DIRECTORS AND OFFICERS LIABILITY POLICY INCLUDING EMPLOYMENT PRACTICES AND SECURITIES CLAIMS COVERAGE**." The policy period was from October 21, 2010 to October 21, 2011.  It was a "claims made" policy. It permitted notice of a claim to be provided to the insurance company up to 90 days after the

expiration of the policy.   As noted above, on February 22, 2011, Defendants had asserted counterclaims which included allegations of wrongdoing involving Plaintiff's issuance of securities. Although no one knows whether the insurance company would have actually provided a defense and covered any settlement or judgment arising out of the counterclaims, the existence of this policy clearly triggered the Fed. R. Civ. P. 26 duty to disclose.

Relying on Plaintiff's representations concerning the unavailability of insurance, Defendants did not raise the issue again until nearly one and one-half years later, when the discovery process in this case resulted in their obtaining information which raised a suspicion that Plaintiff did, in fact, have potentially relevant insurance coverage.   First, defense counsel spoke with a witness who informed him that there was insurance.   Accordingly, on August 30, 2012, defense counsel sent Plaintiff's counsel a letter revealing the former's knowledge of potential insurance and asking Plaintiff's counsel to investigate and, if necessary, supplement Plaintiff's Rule 26 disclosures accordingly. Having received no response, on September 20, 2012, defense counsel sent a follow-up email requesting information about any insurance policies.   Mr. Csajaghy responded with an email on September 21, 2012 reiterating the nonexistence of insurance.

Second, in April and May 2012, a nonparty provided documents to Plaintiff's counsel pursuant to Defendants' subpoena.   These documents were ultimately provided to Defendants on August 11, 2012.   These documents, and public filing information obtained by defense counsel, contained evidence that Plaintiff had a potentially relevant insurance policy.   Therefore, on October 3, 2012, defense counsel sent Plaintiff's counsel a third direct inquiry disclosing the former's knowledge of potentially relevant insurance coverage, listing the various sources of information, and again requesting a disclosure of the policy.   Mr. Csajaghy, Plaintiff's counsel, sent the following

4

reply one week later:

> **[Plaintiff] has no insurance that covers these claims.  That is what we disclosed over a year ago, and that position has not changed.  There is nothing to compel [although, importantly, defense counsel did not even threaten a motion to compel].  Should you file yet another . . . motion to compel, we will ask that we be awarded fees from your clients and from you for filing a frivolous motion.**

Defendants did file a motion to compel on that same day, October 10, 2012.  Mr. Csajaghy withdrew from the case the following day, October 11, 2012.  The next day, on October 12, 2012, Plaintiff's remaining lawyer, James Pennington, revealed to defense counsel the existence of the D&O policy that included securities claims coverage.  Plaintiff ultimately made a claim on the policy, which was denied on the sole basis of timeliness (the policy having lapsed in October 2011).  This motion followed.

The evidence at the hearing of this matter did not establish intentional misrepresentation by Plaintiff's attorneys.  It did establish that neither attorney ever took a serious look at whether there was applicable insurance, and that they learned of the existence of a "D&O" policy and simply believed that, because no directors or officers (or any individual at all) was named in the counterclaim, the policy would not be relevant.

Mr. Pennington testified that he began representing Plaintiff in 2009.  In March 2011, he became their general counsel.  In connection with his Rule 26 disclosure requirements in 2011, he spoke with another employee of the Plaintiff about the company's insurance, explaining to that employee the existence of this lawsuit and the need to disclose any potentially relevant insurance policies.  That employee disclosed to Mr. Pennington that the company had a directors and officers liability policy and a general liability policy.  Although Mr. Pennington did not recall having ever reviewed a directors and officers insurance policy in his career, he made the assumption, without

looking at the policy, that it would not apply to Defendants' counterclaims, because Defendants did not sue any directors or officers.  Mr. Pennington had some question about the general liability policy and spoke to Mr. Csajaghy about it, again without looking at the policy, but Mr. Csajaghy told him that nothing in the case would trigger coverage under a general liability policy.  In the summer of 2012, one of Plaintiff's directors asked Mr. Pennington a question about the directors and officers policy.  At that time, Mr. Pennington looked at the declaration page but did not consciously apprehend that there was coverage for securities claims.  Only upon the filing of Defendants' motion to compel on October 10, 2012 did Mr. Pennington read the policy and, within one or two days, provided it to defense counsel.  Mr. Pennington had resigned from his general counsel position on September 8, 2012 because of Plaintiff's inability to pay him, and Mr. Pennington admitted that he was not paying as close attention to the case as he should have in the several months leading up to that point due to the lack of payment of salary and his need to begin establishing a private practice.  During this time he also had personal matters that were taking his attention.  He testified that he was not always checking his company email during this time.

Mr. Csajaghy testified that neither he nor Mr. Pennington pulled the policy to look at it.  He also testified that each time he received any communication from Mr. McFarland inquiring about insurance, he would pass the communication along to Mr. Pennington as well as, perhaps, speak with him about it.

The hearing also established that Plaintiff has no resources, having failed to pay even a $1143.50 cost award that I ordered on January 17, 2013 in connection with Defendants' successful motion to compel production of the insurance policy.

Defendants are seeking the sanction of default judgment on their counterclaims against

Plaintiff.  They believe that no other remedy will suffice given Plaintiff's inability to pay even a small cost award.  They assert that their potential damages under their counterclaims are at least $500,000, and that they have expended $300,000 in attorney's fees in this case.  The D&O/Securities policy in this case had a $5 million limit.  Defendants argue that Plaintiff's failure to disclose in a timely manner the existence of insurance has effectively barred them from recovering on their counterclaims.

## DISCUSSION

The Tenth Circuit set forth a non-exhaustive list of factors a district court should consider when evaluating grounds for dismissal of an action with prejudice as a sanction under Fed. R. Civ. P. 37(b)(2)(A)(vi), a provision which permits, by its own terms, "rendering a default judgment against the disobedient party" for "fail[ing] to provide information or identify a witness as required by Rule 26(a) or (e)"[2]: "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; ... (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992) (internal quotations and citations omitted). "[D]ismissal is warranted when 'the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits.'" *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1144 (10th Cir. 2007) (quoting *Ehrenhaus,* 965 F.2d at 921). "These factors do not constitute a rigid test; rather, they represent criteria for the district court to consider prior to imposing dismissal as a sanction." *Ehrenhaus*, 965 F.2d at 921.  As I discuss below, I believe this is a clear situation in which justice

---

[2]Fed. R. Civ. P. 37(c)(1)(C).

requires the sanction of default judgment, despite the nonapplicability of one of the five *Enrenhaus* factors. Four of the five factors strongly support default judgment, so much so that they outweigh the presumption that Defendants' counterclaims be litigated on their merits.

Considering the first factor, the Court finds that Plaintiff's conduct has caused the Defendants severe actual prejudice, because, as more fully explained below, the existence of insurance would have resulted in Defendants' litigating this case is a far different manner. Moreover, the nondisclosure has resulted in the lack of any available resources to cover a potential judgment against Plaintiff or even the cost award that I gave in this case. Although it is uncertain whether Defendants will recover on their counterclaims, or whether the case as currently pleaded would have resulted in a favorable coverage decision from the insurance company, Defendants have also been prevented from attempting to amend their counterclaims with the knowledge of potentially relevant insurance coverage. Short of the unlikely fact scenario in which the injured party has already achieved a judgment and the insurance company gratuitously offers up the opinion that had they been informed of the claim they would have covered the judgment, I cannot envision a more concrete case of prejudice than that presented here.

Second, the nondisclosure of the insurance policy has significantly interfered with the litigation process. This case would have had a far different experience had insurance been timely disclosed, as the Advisory Committee notes to Fed. R. Civ. P. 26 amply demonstrate:

> Disclosure of insurance coverage will enable counsel for both sides to make the same realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation. It will conduce to settlement and avoid protracted litigation in some cases, though in others it may have an opposite effect. The amendment is limited to insurance coverage, which should be distinguished from any other facts concerning defendant's financial status (1) because insurance is an asset created specifically to satisfy the claim; (2) because the insurance company ordinarily controls the litigation; (3) because information about coverage is available

8

only from defendant or his insurer; and (4) because disclosure does not involve a significant invasion of privacy.

Third, regardless of the precise *mens rea* of Plaintiff's general and outside counsel in failing to investigate properly and disclose the existence of insurance, they must be viewed as significantly culpable, especially when the Defendants' attorney's attempts to bring the failure of disclosure to Plaintiff's counsel's attention did not result in a hard look at the availability of insurance but, rather, brought threats against defense counsel for continuing to seek "nonexistent" insurance information. Mr. Pennington was Plaintiff's employee during the time of Plaintiff's Rule 26 disclosure obligations, most particularly while the policy was still in effect and notice of a claim could still have been provided to the insurance company (through mid-January 2012). He knew Plaintiff had two insurance policies, the D&O and the general liability, and decided not to review them for potential relevance. Although I agree with Mr. Pennington's testimony that it would only make sense for him to access insurance resources if they were available (to pay for cost of defense to the counterclaims), especially when Plaintiff was not even paying Mr. Pennington's salary, let alone his billable hours once he left the company, I cannot help but find that the lack of inquisition from February 2011 to October 2012 exhibited deliberate indifference to the obligation of providing relevant insurance information under Rule 26. Either or both of Mr. Pennington's and Mr. Csajaghy's conduct is relevant in this analysis. *Riviera Drilling & Exploration Co. v. Gunnison Energy Corp.*, 412 F. App'x 89, 94 (10th Cir. Jan. 5, 2011) ("[T]here is no need to apportion blame between lawyer and client. Under the *Ehrenhaus* factors we rarely distinguish between the party and its agent.") (citation omitted).

Fourth, the lone *Ehrenhaus* factor that is in Plaintiff's favor is the lack of any warning by the Court that dismissal could result from failure to disclose. By the time the Court was involved in the

dispute over insurance coverage, Plaintiff had already provided the policy to Defendants. However, "[n]ot every case will require the district court's evaluation of all the *Ehrenhaus* criteria, . . . since 'often some of these factors will take on more importance tha[n] others.'" *Anaeme v. FHP of New Mexico*, 201 F.3d 447 (Table), 1999 WL 1101756, at *2 (10th Cir. 1999) (quoting *Archibeque v. Atchison, Topeka & Santa Fe Ry. Co.*, 70 F.3d 1172, 1175 (10th Cir. 1995) (affirming district court's dismissal order which stated the reasons for dismissal despite court's failure to warn plaintiff of impending dismissal)). *See also Riveria Drilling & Exploration Co.*, 412 F. App'x at 95 ("Even if the district court did not weigh the notice factor in deciding to dismiss the case with prejudice, there is no reason to believe that consideration of the factor could have caused the court to choose a lesser sanction or no sanction at all.").

Finally, being privy to Plaintiff's resources and current obligations, I do not believe there is any other sanction what would mean anything at all. No monetary sanction will be honored, and there is nothing else in Rule 37's list of potential sanctions that will provide any practical benefit to Defendants.

Because the nondisclosure of insurance information affects only the Defendants' counterclaims against Plaintiff, I do not believe dismissal of Plaintiff's claims against Defendants is appropriate.

## **CONCLUSION**

Based on the foregoing, I believe that Plaintiff's conduct in this matter necessitates entry of default judgment for Defendants and against Plaintiff as a sanction for violation of Fed. R. Civ. P. 37(c)(1). For this reason, I respectfully RECOMMEND that the District Court **GRANT** Defendants' Third Motion for Discovery Sanctions [filed December 17, 2012; docket #254] and

enter default judgment for Defendants on their counterclaims, with the amount of judgment to be determined at a hearing.

Dated this 7th day of March, 2013, in Denver, Colorado.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge