**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 11-cv-00198-MSK-MEH

**SUN RIVER ENERGY, INC.,**

      Plaintiff,

v.

**ERIK S. NELSON;
STEVE STEPHENS; and
CORAL CAPITAL PARTNERS, INC.,**

      Defendants.

---

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
MOTIONS FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court pursuant to the Plaintiff's ("Sun River")

Motion for Summary Judgment **(# 207)**, the Defendants' response **(# 222)**, and Sun River's reply

**(# 231)**; and the Defendants' Motion for Summary Judgment **(# 249)**, Sun River's response

**(#251)**[1], and the Defendants' reply **(# 256)**.

## FACTS

The Court summarizes the pertinent facts here, and elaborates as appropriate in its

analysis.

On October 15, 2007, Sun River and Defendant Coral Capital Partners, Inc. ("Coral")

entered into a contract by which Sun River retained Coral "for the purpose of providing advisory

---

[1] The docket contains a second entry, #252, also identified as Sun River's response to the Defendants' motion, but that document appears to simply be a continuation of Sun River's exhibits referenced in #251.

services to [Sun River] regarding an evaluation of [Sun River's] business plan, and advisory services related to [Sun River's] business development and expansion plans." Further, the contract noted Sun River's need for Coral to "identify[ ] and evaluat[e] potential brokerage firms, investment funds or group[s], and accredited investors" in order to obtain funds for Sun River's expansion. It called for Coral to perform the following acts: (i) "assist in the formulation and evaluation of various structural and financial alternatives"; and (ii) "assist in the location and evaluation of potential entities" – namely, the brokerage firms, investment funds, and accredited investors mentioned above. In exchange, Coral would receive: (i) upon the signing of the agreement, a warrant to purchase 150,000 shares of Sun River's common stock at a given price; and (ii) a monthly fee of $7,500. In addition, Sun River promised to pay Coral "a fee based upon the 'Lehman Bros. formula'[2] for any advisory services performed in connection with capital raising or mergers & acquisitions services."

Erik Nelson, one of the principals of Coral, testified in his deposition that Coral's performance under the agreement consisted of "writ[ing] a business plan and develop[ing] a financial model, and then to help find the company an investment banking firm that would issue a letter of intent." Coral delivered the business plan to Sun River in January 2008. It "evaluated some investment funds and groups" that Sun River had been in discussions with, "to determine if they actually had the funding capability to do what they promised." Eventually, Coral introduced an investment banking firm, Chadbourn Securities, to Sun River, and Chabourn issued a letter of intent to Sun River, indicating its intent to raise $10 million in capital to fund Sun River's business plan (although it appears that no funding ever occurred).

---

[2]    The "formula" was a tiered percentage based on the transaction value, with the fee percentage dropping at the transaction value increased through defined tiers.

In April 2008, Sun River terminated the contract with Coral, citing financial hardships. At that point in time, Coral claimed that it was owed $52,500 for services provided under the contract (*i.e.* seven months' of $7,500 monthly fees). In August 2008, Sun River's Board of Directors approved a resolution authorizing the issuance of 150,000 shares of restricted stock to Coral (and its principals) in full satisfaction of all obligations under the contract, and Coral accepted.

Subsequently, a dispute arose over the stock and the Defendants' sales the stock. The precise details of that dispute, apparently over a restrictive legend placed on the shares given to the Defendants, is at the core of the claims and counterclaims in this case, but has only a passing connection to the issues to be resolved on the instant motions, as discussed below.

On or about January 10, 2011, Sun River commenced the instant action in the Colorado District Court for Denver County. Its Amended Complaint alleges (# 58): (i) a claim, of somewhat uncertain provenance, that Sun River "is under no duty to register" a transfer of shares owned by the Defendants, pursuant to C.R.S. § 4-8-401, because "the requested transfer is not rightful" for various reasons, including the fact that adequate consideration was not paid by the Defendants, that the Defendants breached contractual obligations owing to Sun River, and that the Defendants had violated and were intending to violate federal securities laws by trading on insider information; (ii) a claim for a declaratory judgment under C.R.S. § 13-51-101, arising out of a dispute over the Defendants' request that Sun River remove restrictive endorsements on the Defendants' stock, that Sun River is not obligated to register the transfer of those shares or to remove the restrictive legend, and that the Defendants were obligated to forfeit their shares for essentially the reasons set forth in the first claim; (iii) breach of contract, arising out of the

Defendants' failure to keep certain information confidential; (iv) breach of fiduciary duty, apparently arising out of the same facts as the breach of contract claim; and (v) a "claim" for injunctive relief directing the Defendants to "cease and desist from their efforts to remove the restrictive legends or otherwise register transfer [of] the shares" and to "refrain from any attempt to sell such stock and to return all such stock to Sun River."

The Defendants removed **(# 1)** the case to this Court based on diversity jurisdiction under 28 U.S.C. § 1332. The Defendants filed an Answer **(# 71)** to Sun River's Amended Complaint, asserting several counterclaims: (i) a claim, apparently for monetary damages, that Sun River is "statutorily bound to register" the transfer of the Defendants' shares "free of any legend" pursuant to C.R.S. § 4-8-401; (ii) a claim for civil theft under C.R.S. § 18-4-401 *et seq.*, in that Sun River has "exercised dominion and control over property (*i.e.* stock)" belonging to the Defendants without authorization; (iii) securities fraud in violation of Section 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j and 78t, in that Sun River entered into the August 2008 settlement by tendering 150,000 shares of stock with a restrictive legend, intending the Defendants to believe that the restrictive legend would be removed at a certain time, but that Sun River did not at that time have a present intention to remove the restrictive legend when appropriate; (iv) violation of the Colorado Securities Act, C.R.S. § 11-15-101 *et seq.*, on essentially the same facts; (v) violation of the Colorado Organized Crime Control Act ("COCCA"), C.R.S. § 18-17-101 *et seq.*, in that Sun River and its officers engaged in a pattern of racketeering activity, via acts of securities fraud and civil theft, to deprive the Defendants of their rights under the securities at issue; (vi) a claim of "breach of fiduciary duty to shareholders," based on Sun River's failure to "act in utmost good faith towards the

shareholders, to operate the company for the shareholder's benefit, to deal fairly with the shareholders, and to treat all shareholders equally"; and (vii) a claim for a declaratory judgment that Sun River "must remove the restrictive legend" from the shares and register their transfer as directed by the Defendants.

Sun River now moves **(# 207)** for summary judgment in its favor on its first, second, and fifth claims, and on the Defendants' counterclaims. Except as discussed below, nearly all of Sun River's contentions collapse down to a single assertion: that the contract it signed with Coral (and upon which the shares were distributed) was void *ab initio* under federal and state securities laws, insofar as it could only be performed by a registered broker/dealer, which Coral indisputably was not.

## ANALYSIS

### A. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter

for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**B.  Sun River's motion**

1. Voidness of contract

Most of Sun River's arguments spring from the premise that its contact with Coral was void. An abbreviated recapitulation of its argument proceeds through the following steps:

> 1.  The Securites Exchange Act provides that where a contract calls for a party to perform an act that would violate any securities law, that contract is void. 15 U.S.C. § 78cc(b).
>
> 2.  The contract between Sun River and Coral required Coral to locate potential investors and introduce them to Sun River.
>
> 3.  The Securities Exchange Act requires that any person who attempts to "induce the purchase or sale of [an unregistered security]" is required to register with the SEC as a "broker." 15 U.S.C. § 78o(a)(1)
>
> 4.  The activities identified in (2) constitute the actions of a "broker" under (3).
>
> 5.  The Defendants were not registered as "brokers" with the SEC.
>
> 6.  Therefore, Coral's performance of its contractual obligations would require it to violate securities laws, rendering the contract void under (1).
>
> 7.  Because the contract was void, the Defendants had no entitlement to payment under it, and thus, no entitlement to receive the shares given to them in August 2008 in settlement of their demand for payment under the contract.
>
> 8.  Because the Defendants have no entitlement to the shares, Sun River is under no obligation to recognize transfers of the shares, remove any restrictive endorsements, etc. Thus, Sun River is entitled to summary judgment on its claims relating to those shares, as well as on the Defendants' counterclaims relating to those shares.

7

*See generally DeHuff v. Digital Ally, Inc.*, 2009 WL 4908581 (S.D.Miss. Dec. 11, 2009) (unpublished) (denying summary judgment to stock issuer in similar situation). This Court finds that there are genuine disputes of fact bearing on several of these issues, such that summary judgment in favor of Sun River, on its own claims or on the Defendants' counterclaims, is inappropriate.

For example, there is a genuine dispute of fact as to what services Coral performed. Because the Defendants are the non-movants here, the Court construes the evidence in the light most favorable to them. Mr. Nelson testified that Coral's obligations under the contract were threefold: (i) develop a business plan for Sun River, (ii) develop a "financial model" for Sun River; and (iii) to help locate a investment bank or other investor that would provide Sun River with a letter of intent.

Only the third task even arguably implicates securities laws; there is nothing inherently unlawful in the parties contracting for, *e.g.*, preparation of a business plan. The Court notes that paragraph 13 of the parties' contract provides for severability of invalid or unenforceable provisions, and thus, even if the contract called for Coral to perform some services that were in violation of securities laws, there is no impediment contractual terms requiring Coral to provide and Sun River to pay for development of a business plan. Mr. Nelson testified that Coral constructed a business plan and Sun River accepted it. This alone would entitle the Defendants to some measure of compensation under the contract, regardless of whether Sun River is otherwise correct that the contract <u>also</u> called for the Defendants to engage in unregistered brokering.

Moreover, there is a genuine dispute of fact as to whether the tasks the Defendants performed in identifying and evaluating potential investors would constitute prohibited "brokering." Under 15 U.S.C. § 78c(a)(4)(A), a person who is "engaged in the business of effecting transactions in securities for the account of others" is a "broker." Whether a person's activities constitute "effecting transactions" is a fact-intensive inquiry, examining issues such as: (i) whether the person works as an employee of the securities' issuer; (ii) whether he receives a commission rather than a salary; (iii) whether he sells or has sold the securities of another issuer; (iv) whether he participates in negotiations between the issuer and investor; (v) whether he provides advice or a valuation as to the merit of an investment; and (vi) whether he actively, rather than passively, finds investors. *S.E.C. v. Kramer*, 778 F.Supp.2d 1320, 1334 (M.D.Fl. 2011). Some courts have given particular weight to the factor of whether the person regularly participates in securities transactions at key points; others have deemed transaction-based compensation to be "one of the hallmarks" of a broker. *Id.*

The record is insufficiently specific to permit the Court to make a conclusive determination as to precisely what the Defendants did on Sun River's behalf, much less conclude that such activity constitutes "brokering" as a matter of law. Sun River points to portions of Mr. Nelson's deposition testimony in which he acknowledged "evaluating" potential investors, without supplying any details as to the nature, depth, or consequences of such "evaluation"; that Mr. Nelson "referred" Sun River to various broker-dealers and "introduced" Sun River to others, but without any particular detail as to what Mr. Nelson said to these individuals or entities. Similarly, Sun River points to portions of Mr. Stephens' deposition testimony in which he acknowledged having "meetings" with potential investors, but, again, there is no detail of the

purpose or contents of such meetings.  Without such detail, the Court is helpless to conclude whether the Defendants' actions in "evalulating," "referring," and "introducing" were or were not the types of acts that could lead to a conclusion that Coral was "brokering"[3] (much less that doing so was required by the contract).

The bulk of Sun River's argument that the Defendants were engaged in unlawful "brokering" is premised on the fact that the contract contained the "Lehman Bros. formula" providing for certain incentive-based payments.   As noted above, many courts find incentive-based compensation to be particularly indicative of broker-type activities.  *Kramer,* 778 F.Supp.2d at 1334, *citing Cornhusker Energy Lexington, LLC v. Prospect St. Ventures*, 2006 WL 2620985 (D.Neb. 2006) ("the underlying concern has been that transaction-based compensation represents a potential incentive for abusive sales practices that registration is intended to regulate and prevent").  But the mere fact that the contract between Sun River and Coral contains a provision for incentive-based payment does not compel the conclusion that all of Coral's acts incident to that contract were the prohibited acts.  The record reflects that Coral never claimed that Sun River owed it any compensation under the Lehman Bros. formula; rather, when Sun River terminated the contract in April 2008, Coral sent an invoice claiming that it was owed only the accumulated fixed monthly fees.  The Court also acknowledges Mr. Nelson's deposition testimony, in which he states that he never anticipated that the Defendants would receive an

---

[3]   Sun River may believe that terms such as "referred" or "introduced" have specifically-defined meanings in the investment banking or securities field, such that the mere admission by the Defendants that Mr. Nelson "introduced" Sun River to an investment banker would be understood by those in the industry to constitute a precise set of actions or statements.  If that is the case, the parties have not clearly indicated so, much less pointed the Court to evidence or authority describing the acts that such a term would be understood to encompass.  In the absence of such evidence or authority, the Court assumes these words to have their ordinary meanings, with all of the vagueness they inherently contain.

incentive-based fee, even for introducing Chadbourn to Sun River and securing the letter of intent, and indeed, that he believes that the incentive-based formula was included in the contract only as a result of inadvertence as "it doesn't apply to any of the normal activities engaged in by Coral." Accordingly, the Court cannot say that the mere presence of the Lehman Bros. formula in the contract, divorced from any evidence that the parties anticipated or intended that formula to provide Coral compensation for some specific services, supports the conclusion that the contract was void.

Even assuming that Sun River could establish that the contract called for Coral to provide some services in the nature of "brokering," the Court would still be unable to grant summary judgment to Sun River on the theory set forth above. 15 U.S.C. § 78cc(b) provides that a contract made in violation of the Act is "void as regards the rights of the violator," but does not compel the conclusion that the contract is a nullity. *Mills v. Electric Auto-Lite Co.*, 396 US. 375, 386-87 (1970). To obtain a determination that the contract is void, Sun River must be able to show that "the violation [is] inseparable from the performance of the contract, rather than collateral or tangential" to it. *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 205 (3d Cir. 2006). Because the contract contains a severability clause, there is no reason why the Court could not sever out that portion of the contract that called for Coral to engage in unlawful behavior, and continue to enforce that portion of the contract that called for it to engage in lawful conduct (*e.g.* developing a business plan and financial model).

Moreover, assuming Sun River's claim has survived thus far, the Court has some doubt that this matter even presents a situation in which application of 15 U.S.C. § 78cc(b) is even appropriate. If the Court were to conclude that the contract between Sun River and Coral was

arguably void under the Act, it must be acknowledged that the Defendants are not seeking to enforce that contract in any way. Rather, the record makes clear that in April 2008, the Defendants made a demand for $52,000 for services performed under that contract, that there was apparently some dispute over whether or how Sun River would pay that amount, and that the dispute was eventually resolved in August 2008 by Sun River tendering 150,000 in shares in full satisfaction of the alleged debt. At that point, the voidness of the underlying agreement became moot, as the parties had entered into a new agreement: Sun River paid 150,000 shares of stock to settle a dispute over the amount it owed Coral (if, indeed, it owed Coral anything), and the instant suit appears to arise over a dispute as to the Sun River's obligations under that contract. In other words, the instant dispute concerns whether Sun River is complying with the August 2008 agreement that settled a dispute over the October 2007 contract, and not a dispute over the October 2007 contact itself. Sun River does not, and likely cannot, argue that the October 2007 contract is somehow void.[4]

---

[4] Sun River appears to contend that the Defendants are not entitled to the stock they received as a result of the August 2008 agreement because they did not provide consideration for receiving it. The record makes clear that, in exchange for the 150,000 shares, the Defendants compromised their belief that amount owed by Sun River warranted payment in the amount of 262,500 shares (as shown in Coral's April 28, 2008 final invoice). Sun River might be heard to contend that, because the contract was void, Coral had no cognizable claim against Sun River in any amount, and thus, surrendered nothing of value when it agreed to accept the 150,000 shares in August 2008. However, general principles of contract law provide that a party who surrenders a legal right provides valuable consideration, even if that right later turns out to be illusory, if the party surrendering it believed in good faith at the time of contracting that it was valid. *Road and Highway Builders, LLC v. U.S.*, 702 F.3d 1365, 1368 (Fed. Cir. 2012), *citing* Restatement (Second), Contracts, § 74(1) ("Forbearance to assert or the surrender of a claim or defense which proves to be invalid is not consideration unless: (a) the claim or defense is in fact doubtful because of uncertainty as to the facts or the law, or (b) the forbearing or surrendering party believes that the claim or defense may be fairly determined to be valid." Nothing in the record before the Court suggests that, as of August 2008, the Defendants did not believe in good faith that the October 2007 agreement with Sun River was valid.

For these reasons, among others, the Court finds that Sun River is not entitled to summary judgment in its favor on any claim or counterclaim that is premised upon the fundamental belief that the October 2007 contract between it and Coral is void. Such claims shall proceed to trial.

### 2. Securities fraud counterclaims

Sun River seeks summary judgment on two of the Defendants' counterclaims on theories that do not turn on the alleged voidness of the 2007 contract between the parties, and thus, the Court turns to those arguments. Both address claims of securities fraud that the Defendants assert under both federal and state law. (The parties appear to agree that the same facts and standards apply to both claims, and thus, the Court considers only the federal claim with the understanding that its rationale applies equally to both.)

The Defendants' securities fraud counterclaims are premised on the notion that Sun River induced them to accept shares of stock with certain restrictions in exchange for settling their claim under the October 2007 contract, but that at the time of that transaction, and that Sun River led the Defendants to believe that the restrictive legend on those shares would be removed at a certain point in time, but that Sun River lacked any present intent to remove the restrictive legend and concealed that fact from the Defendants.

To establish a claim for securities fraud under § 78j, the Defendants must show: (i) that Sun River made an untrue statement of material fact or failed to state a material fact; (ii) that such statement or omission was in connection with the purchase or sale of securities; (iii) that the statement or omission was made with the appropriate scienter; and (iv) the Defendants relied upon that statement or omission to their detriment. *Anixter v. Home-Stake Prod. Corp.*, 77 F.3d

1215, 1225 (10th Cir. 1996). Sun River alleges that the Defendants cannot show that it lacked any present intention to perform the act of removing the restrictive legend at the time it offered the shares, and thus, the Defendants cannot show a fraudulent statement or omission.

Ordinarily, fraud does not arise out of unfulfilled predictions or erroneous conjectures as to future events; however, fraud is recognized when a person who makes a promise to perform a particular act in the future, while simultaneously harboring a present intention not to fulfill that promise. *Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1230 (10th Cir. 1999). Thus, to the extent that the Defendants can point to: (i) a statement by Sun River expressing an intent to remove the restrictive legend on the shares in the future; and (ii) a simultaneous present intent by Sun River to not honor that promise, its securities fraud claim can proceed.

The Defendants have not come forward with sufficient evidence to establish either requirement. First, the Defendants point to no particular statements by Sun River referring to the restrictive legend on the certificates. Although there is much discussion of the restrictive legend in the parties' filings, the Court's review of the record reveals nothing about the legend's contents or the circumstances upon which that legend was attached to the shares distributed to the Defendants in August 2008. Absent evidence of some representation as to the circumstances under which Sun River would remove the restrictive legend, the Court cannot find that Sun River lacked a present intention to honor that representation.

Moreover, the Defendants have not come forward with evidence demonstrating that in August 2008, Sun River lacked any present intent to remove the restrictive legends (under whatever criteria may have triggered such obligation). The Defendants argue that evidence of that present intent can be inferred by Sun River's "extensive efforts to deprive Defendants of

14

their rights [to transfer the shares] as soon as they attempted to exercise them," apparently referring to a situation first occurring in late November 2008. At that time, Mr. Nelson apparently attempted to sell some of his Sun River shares, only to receive a phone call from Harry McMillan, a principal of Sun River, who instructed Mr. Nelson that he could only sell shares with Mr. McMillan's approval (and that he was refusing to grant such approval). The Court is unable to definitively correlate Mr. McMillan's statement with any restrictive legend on the shares themselves, but assuming there is a connection, the record indicates nothing about Sun River's state of mind in August 2008. The fact that Mr. McMillan chose to object to Mr. Nelson's attempted sale in November 2008 does not permit any particular inferences to be drawn about Sun River's state of mind two months earlier.

Accordingly, the Court finds that Sun River is entitled to summary judgment on the Defendants' federal securities fraud counterclaims.

**C. Defendants' motion**

The Defendants' summary judgment motion seeks judgment in the Defendants' favor on two of their counterclaims: (i) the claim alleging a violation of Sun River's duty to register the Defendants' shares pursuant to C.R.S. § 4-8-401, and (ii) the Defendants' securities fraud claims.

1. Registration claim

C.R.S. § 4-8-401 provides that "if a certificated security in registered form is presented to an issue with a request to register transfer or an instruction is presented to an issuer with a request to register transfer of an uncertificated security, the issuer shall register the transfer as requested if" certain specified criteria are met. The Defendants contend that they have met each of the statutory criteria, and thus, are entitled to relief under C.R.S. § 4-8-401.

The Court denies the Defendants' motion for fairly prosaic reasons: the record is insufficient regarding the nature, date, and contents of the request by the Defendants to Sun River. The "request" in question appears to be the Defendants' request that Sun River "remove the restrictive endorsements on their stock shares," and the Defendants contend that Sun River concedes that such a request was made, but the only citation to the record by the Defendants to establish this point is a reference back to pages 2-3 of Sun River's own summary judgment motion. The Court has reviewed those pages and finds nothing therein that sufficiently describes what request the Defendants made, when they made it, what authority or information they provided or cited to in making the request, or any other circumstances (such as Sun River's formal response to the request) that would give the Court even the slightest understanding of the factual basis for the counterclaim.

The Court can glean only the slightest hint as to this fundamental factual issue through examination of an October 4, 2010 opinion letter from Ronald Logan, Sun River's Counsel, to recipients that appear to include Sun River's CEO and a transfer agent. The opinion letter states that "Steve Stephens . . . has requested removal of a restrictive legend from 93,750 shares of Sun River Energy, Inc. common stock," and proceeds to opine that "removal of restrictive legend and any subsequent transfer" of the stock "will be in compliance" with securities laws. Even if this letter at least begins to draw the contours of the Defendants' alleged "request" – giving an approximate time frame and a vague description of the nature of the request – the Court finds that the record herein is still insufficient to permit the Court to make an informed examination of the C.R.S. § 4-8-401 factors as they relate to a "request" for which the Court has no meaningful information.

As the party with the burden of proof on this claim, the Defendants must come forward with evidence sufficient to establish each of the elements of the claim, which, by definition, include an adequate showing that a request was made. Because they have not done so on the instant record, the Defendants' request for summary judgment in their favor on this counterclaim is denied, and the matter will have to be presented in full at trial.

2. Securities fraud

The Defendants also seek summary judgment on their federal securities fraud claim. Interestingly, in presenting this claim in their own summary judgment motion, they articulate a theory of the claim that is far different from the one they alleged in their (unsuccessful) response to Sun River's motion for summary judgment on that counterclaim. In the instant motion, the Defendants contend that the misstatement or omission committed by Sun River at the time of the issuance of the shares was the failure to disclose that Sun River's principal, Mr. McMillan and Ciccerone Development Corp., a company owned by Mr. McMillan, were "wrongfully engaged in the purchase and sale of shares to reap 'short-swing' profits," in Sun River's stock, in violation of federal securities laws. The evidence cited by the Defendants in support of this contention is a brief filed by Sun River in an adversary proceeding arising out of a bankruptcy case filed by Mr. McMillan in Texas. In that brief, Sun River alleged that Mr. McMillan, directly and through Ciccerone, made unlawful short-swing trades in Sun River's stock in violation of 15 U.S.C. § 78p(b) in certain specified transactions between August 2010 and June 2011. *Docket* # 249, Ex. M at 11-12. The Defendants do not indicate whether the Bankruptcy Court granted Sun River's summary judgment motion, or point to any evidence derived from that adversary proceeding.

17

The Court has some doubt as to whether it could, much less should, entertain the Defendants' motion with regard to their federal securities fraud claim. As discussed above, the Court has already granted summary judgment to Sun River on that claim, at least to the extent the Defendants predicated it on false statements or omissions by Sun River regarding its intention to remove the restrictive legend on the Defendants' stock. Moreover, the Court has some doubt as to whether the Defendants current incarnation of this counterclaim – that the fraudulent conduct by Sun River was concealing Mr. McMillan's short-swing trading -- is consistent with the allegations in their Amended Answer. That pleading states that "at the time of entering into the settlement [by which the Defendants obtained their shares], Sun River's controlling persons had the present intent to engage in patterns of wrongdoing to prevent various securities holders like the [Defendants] from freely trading their securities."

In any event, it is unnecessary for the Court to consider this iteration of the counterclaim in any significant detail because the Defendants have not show that Mr. McMillan was engaging in any impermissible conduct as of August 2008, when the Defendants obtained their shares. The fact that Mr. McMillan may have proceeded to do so two years later does not suffice to demonstrate fraudulent conduct by Sun River at the time the Defendants acquired the shares in 2008. Moreover, to the extent the Defendants invite the Court to presume that Mr. McMillan harbored a present intention in August 2008 to engage in short-swing trades two years hence, and thus committed fraud by failing to disclose that intention to the Defendants at the time they accepted the shares, the record is utterly insufficient to demonstrate that fact.

Accordingly, the Court declines to find that the federal securities fraud counterclaim, in the version asserted by the Defendants' summary judgment motion, permits the entry of summary judgment in the Defendants' favor.

## CONCLUSION

For the foregoing reasons, Sun River's Motion for Summary Judgment **(# 207)** is **GRANTED IN PART**, insofar as Sun River is entitled to summary judgment on the Defendants' counterclaims sounding in federal and state securities fraud (counterclaims (iii) and (iv)), and **DENIED IN PART**, in all other respects. The Defendants' Motion for Summary Judgment **(# 249)** is **DENIED**. Most of the claims in this case will be proceeding to trial, and therefore, the parties are directed to begin preparation of a Proposed Pretrial Order in accordance with the previously-issued Trial Preparation Order **(# 30)**, and shall jointly contact chambers on or before March 29, 2013 to schedule a Pretrial Conference in this case.

Dated this 25th day of March, 2013.

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
Chief United States District Judge