**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

**Civil Action No. 11-cv-00198-MSK-MEH**

**SUN RIVER ENERGY, INC.,**

        **Plaintiff,**

v.

**ERIK S. NELSON;
STEVE STEPHENS; and
CORAL CAPITAL PARTNERS, INC.,**

        **Defendants.**

---

**OPINION AND ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTION
FOR RECONSIDERATION AND DIRECTING ENTRY OF JUDGMENT**

---

        **THIS MATTER** comes before the Court pursuant to the Plaintiff's Motion for Reconsideration **(# 325)** of an October 23, 2013 oral Order **(# 317)** awarding attorney fees to the Defendants against the Plaintiff's present and former counsel, the Defendants' response **(# 328)**, and the Plaintiff's reply **(# 329)**; and the Defendants' motion **(# 326)** seeking to reduce that award of attorney fees to an enforceable judgment.

        The instant issue arises collaterally from the substantive claims in this suit. Plaintiff Sun River Energy, Inc. ("Sun River") commenced this action against the Defendants, and the Defendants asserted certain counterclaims. As found by the Magistrate Judge's March 7, 2013 Recommendation **(# 278)**, in its initial Rule 26 disclosures in April 2011, Sun River, through its counsel, Mr. Csajaghy, represented that Sun River had no insurance policies that would cover the acts underlying the Defendant's counterclaims. (Fed. R. Civ. P. 26(a)(1)(A)(iv) requires unsolicited disclosures of any such insurance policies). Sun River supplemented its Rule 26

1

disclosures on various dates in April and May 2011, but continued to maintain that Sun River had no insurance coverage available for the counterclaims.

In August 2012, the Defendants came to believe that, contrary to Sun River's prior representations, Sun River might actually have had insurance coverage for the counterclaims. Defense counsel wrote two letters to Sun River's counsel (then both Mr. Csajaghy and Mr. Pennington) requesting that Sun River re-visit the question of available insurance. Mr. Casjaghy eventually responded in writing, again, that no such coverage existed. The Defendants made another request in early October 2012, and Sun River, through Mr. Csajaghy, again denied the existence of any insurance.

Shortly thereafter, the Defendants moved to compel production of any Sun River insurance policies, and it was then, for the first time, that Sun River (through Mr. Pennington, Mr. Csajaghy having recently withdrawn from Sun River's representation) revealed the existence of a directors & officers policy that could have applied to some of the counterclaims. (The coverage had since lapsed, preventing the Defendants from making a claim against the policy.)

The Defendants moved for sanctions **(# 254)** against Sun River under Fed. R. Civ. P. 37(b)(2)(A) and 37(c), in the form of dismissal of Sun River's claims and default judgment against Sun River on the Defendants' counterclaims. The Court referred the motion to the Magistrate Judge, who conducted an evidentiary hearing into the matter at which both Mr. Csajaghy and Mr. Pennington testified. Based on that testimony, the Magistrate Judge found that the Plaintiff's attorneys had not engaged in "intentional misrepresentation" about the availability of insurance, but that "neither attorney every took a serious look at whether there was applicable insurance . . . and simple believed that [any] policy would not be relevant." The Magistrate Judge found that Mr. Pennington, acting as Sun River's in-house counsel at the time the initial

Rule 26 disclosures were made in 2011, was aware of the existence of the directors & officers policy, but "made the assumption, without looking at the policy, that it would not apply." He also spoke to Mr. Csajaghy about the policy at that time, but, again, neither of them bothered to read the policy. In 2012, after Mr. Pennington had entered an appearance on Sun River's behalf in this action, Mr. Pennington was asked by an employee about whether the policy would apply to the counterclaims, and Mr. Pennington "looked at the declarations page but did not consciously apprehend that there was coverage." Mr. Csajaghy testified that he simply referred questions about Sun River's insurance coverage to Mr. Pennington. Finding that Sun River itself had no resources, the Magistrate Judge recommended that this Court enter default judgment against Sun River on the Defendants' counterclaims pursuant to Fed. R. Civ. P. 37(c)(1).[1]

Sun River filed Objections[2] **(# 279)** to the Recommendation. This Court addressed those Objections orally at the Final Pretrial Conference on July 16, 2013 **(# 294)**. Although upon *de novo* review, the Court agreed with the Magistrate Judge's findings that Sun River's counsel had rendered "deficient performance" in failing to assess and disclose the insurance policy, the Court disagreed with the Magistrate Judge's conclusion that Sun River itself was culpable for that failure.

Finding that the injury to the Defendants was primarily monetary – *i.e.* the attorney fees expended in bringing the motion for sanctions – the Court granted sanctions to the extent that Mr. Pennington and Mr. Casjaghy would be personally liable to the to Defendants for the costs

---

[1] Notably, the body of the Magistrate Judge's Recommendation addressed the operation of Fed. R. Civ. P. 37(b)(2)(a)(iv), rather than Rule 37(c)(1). Nothing in the Recommendation purports to explain the shift in the rule being considered between the analysis and the conclusion.

[2] Although the Objections purported to take issue with certain factual findings by the Magistrate Judge, Sun River's contentions regarding the facts do not materially differ from the Magistrate Judge's findings.

of making that motion. (Subsequent proceedings **(# 317)** before the Court resulted in the conclusion that the amount in question was $ 20,435.00.)

On November 20, 2013, Sun River – or, more accurately, Mr. Csajaghy and Mr. Pennington – filed the instant Motion for Reconsideration **(# 325)** of the sanctions imposed against them, arguing: (i) Rule 37 does not provide a means by which the Court can impose a sanction against counsel; (ii) that the Court cannot issue sanctions against counsel without first making a finding that counsel acted "without substantial justification" under Rule 26(g)(3), and no such finding was made here; (iii) that an award of sanctions against counsel "would be incongruent with the circumstances of the matter" because Mr. Pennington was acting as Sun River's in-house counsel, not trial counsel, at the time of the erroneous Rule 26 disclosures, and thus, any sanction should run against Sun River itself; and (iv) that Mr. Csajaghy was not present at the Final Pretrial Conference, and thus, was not given an opportunity to be heard before the Court elected to impose sanctions against him personally. Citing Ms. Csajaghy and Mr. Pennington's delay in making the payment ordered by the Court, the Defendants moved **(# 326)** for entry of judgment in the amount of the fees against Mr. Csajaghy and Mr. Pennington.

Mr. Csajaghy and Mr. Pennington's motion allows the Court an opportunity to clarify and expand upon the basis for its ruling. The Defendants' motion for sanctions initially invoked Rule 37(b)(2)(A), which provides that "If a party or a party's officer . . . fails to obey an order to provide or permit discovery . . . , the court where the action is pending may issue further just orders" including (but not limited to) dismissal or entry of default judgments, holding the offender in contempt, etc. Rule 37(b)(2)(C) makes clear that "in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney fees, caused by the failure, unless the failure was

4

substantially justified."  Although the body of the Magistrate Judge's Recommendation initially cited that rule, the "Conclusion" section of the Recommendation instead cited Rule 37(c)(1), which provides that "if a party fails to provide information . . . as required by Rule 26(a) . . . the court, on motion and after giving an opportunity to be heard may order payment of the reasonable expenses, including attorney's fees, caused by the failure [and] impose other appropriate sanctions."  Fed. R. Civ. P. 37(c)(1)(A), (C).  The Court finds that sanctions were properly imposed against Mr. Csajaghy and Mr. Pennington under both Rule 37(b) and Rule 37(c).

**A. Rule 37(b)(2)**

Turning first to Rule 37(b)(2), the event triggering the Court's power to sanction under this rule is the action by a "party or a party's officer" to "fail[ ] to obey an order to provide or permit discovery."  Fed. R. Civ. P. 37(b)(2)(A).

1. Necessity of an Order

Because an "order to provide . . . discovery" is the *sine qua non* for an award of sanctions under Rule 37(b)(2), some commentators have observed that "[w]hen the discovery procedure is initially set in motion by the parties themselves without court order, the party seeking discovery must first obtain an order under Rule 37(a) requiring the recalcitrant party . . . to make the discovery sought; it is only a violation of this order that is punishable under Rule 37(b)."  Wright, Miller *et al*, Federal Practice and Procedure, Civil 3d, § 2282.

The production of Sun River's insurance coverage was a component of the automatic disclosures exchanged by the parties under Rule 26(a)(1) without court intervention, and the Defendants never subsequently sought, much less obtained, an order directing Sun River to produce the insurance policies.  An argument could be made that no predicate court order

5

directing disclosure of those policies exists to permit an award of sanctions under Rule 37(b)(2). However, courts have recognized that a Scheduling Order (or, in some jurisdictions, a "Rule 16 Order") that incorporates the terms of Rule 26(a) can itself be considered "an order to provide . . . discovery" and can support an award of Rule 37(b)(2) sanctions, in and of itself. *See Hathcock v. Navistar Intern. Transp. Corp.*, 53 F.3d 36, 40 (4th Cir. 1995); *see also Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1556 (10th Cir. 1996) (finding Supplementary Scheduling Order embodying parties' discovery agreement was a discovery order sufficient to permit Rule 37(b)(2) sanctions for its noncompliance); Advisory Committee comments to 1980 Amendment to Rule 37(b)(2) ("The amendment provides that the sanctions available for violation of other court orders respecting discovery are available for violation of the discovery conference order").

Here, the Magistrate Judge entered a Scheduling Order on April 7, 2011 **(# 29)** that included a report of the parties' Rule 26(f) conference and their mutual representation that they would make "Initial Rule 26(a)(1) disclosures . . . by April 6, 2011." The Scheduling Order can thus be understood as the Court ordering the parties to make complete Rule 26(a) disclosures by that April 2011 date.[3] Obviously, Sun River did not make that portion of its Rule 26(a)(1) disclosures relating to its insurance coverage until nearly 18 months after the deadline in the Scheduling Order, and thus, its failure to do so was a violation of the Scheduling Order, itself an "order to provide . . . discovery" sufficient to warrant sanctions under Rule 37(b)(2).

    2. Target of sanction

If Sun River's failure to make full Rule 26(a)(1) disclosures is viewed as permitting a

---

[3] Rule 37(b)(2) seems to anticipate this very line of reasoning, as it expressly notes that "an order under Rule 26(f)" can be the type of predicate order permitting an award of sanctions. Rule 26(f) recites the parties' obligation to jointly confer and develop a discovery plan, including deadlines for completion of Rule 26(a)(1) disclosures. Logically, then, Rule 37(b)(2)'s provision for imposing sanctions based on a party's non-compliance with an "order under Rule 26(f)" can encompass a party's failure to make a timely and complete Rule 26(a)(1) disclosure.

sanction under Rule 37(b)(2), the next question is who may properly be subject to such a sanction.

Rule 37(b)(2)(C) expressly provides that, when the sanction takes the form of an award of attorney fees, that sanction may be imposed against "the disobedient party, the attorney advising that party, or both." This is sufficient to warrant the sanction imposed against Mr. Csajaghy, who was acting as Sun River's counsel of record at the time the defective Rule 26 disclosures were made.

The more difficult question is whether Mr. Pennington, serving as Sun River's in-house counsel at the time of the disclosures, can also be the subject of a Rule 37(b)(2) sanction. This exposes a curious ambiguity in Rule 37(b)(2). As noted above, the rule authorizes sanctions when "a party <u>or a party's officer, director, or managing agent</u> . . . fails to obey" a discovery order. Fed. R. Civ. P. 37(b)(2)(A) (emphasis added). However, the remedies available to the Court in imposing such a sanction are either preclusive in nature ( thus imposed only on the offending party), *see* Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi), or, if monetary, may be imposed against "the disobedient party" or "the attorney advising that party." Fed. R. Civ. P. 37(b)(2)(C). The question presented, then, is whether a "disobedient party" subject to monetary sanctions in Rule 37(b)(2)(C) may include the "officer, director, or managing agent" responsible for the discovery violation, or whether the monetary sanction must be imposed against the named party.

In *dicta*, the 8th Circuit in *Isaacson v. Manty*, 721 F.3d 533, 538 (8th Cir. 2013), makes a passing observation that "the rulemakers have authorized courts to sanction not only attorneys, law firms, and parties but also the individual officers of parties." However, *Issacson* does not cite any case in which a court has levied an officer or director of a party, rather than against the party itself, and this Court's research has similarly located no such case. Moreover, although the

Rule appears to attempt to strike at disobedient corporate officers, allowing a court to impose sanctions on those officers personally raises difficult questions of personal jurisdiction and due process, among other things.[4] In addition, reading Rule 37(b)(2)(C) reference to "the disobedient party" to include a corporate officer or director would require the Court to give an idiosyncratic meaning to the word "party" (particularly in light of the Rule's subsequent reference to the attorney advising that party," as the attorney advising a corporate party may not necessarily be advising the corporate officers or directors as well). *See also* Advisory Committee comments to 1970 Amendment of Rule 37(d) (acknowledging the "rare instances when a corporation is unable through good faith efforts to compel a director to make discovery," but assuming that a court is unlikely to grant sanctions in such instance, suggesting that sanctions against the director him- or herself are not authorized). Although Mr. Pennington subsequently became Sun River's attorney of record in this case, and thus became clearly amenable to sanctions under Rule 37(b)(2)(C), he did so only after Sun River had already violated the discovery order.

Accordingly, the Court cannot conclude that monetary sanctions may be directed at Mr. Pennington under Rule 37(b)(2) for Sun River's initial failure to comply with its Rule 26(a) disclosure requirements, but a sanction under that rule against Mr. Csajaghy was appropriate.

### 3. Substantial justification

Finally, Rule 37(b)(2)(C) permits monetary sanctions for attorney fees for discovery violations "unless the failure was substantially justified." The 10th Circuit appears to suggest that "substantially justified" inquiry is based on the same factors that the Magistrate Judge considered (and this Court adopted) when discussing *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992),

---

[4] Those concerns are not necessarily present here, as Mr. Pennington subsequently entered an appearance in this action as Sun River's counsel. Thus, there is no question that the Court has the necessary jurisdiction over Mr. Pennington to impose a sanction.

namely: (i) the degree of prejudice to the Defendants caused by Sun River's noncompliance, (ii) disruption of the judicial process; (iii) Sun River's culpability for the violation; and (iv) the ability to cure the prejudice. *See Woodworker's Supple, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). It is not necessary for the Court to repeat or re-weigh those factors here; it is abundantly clear that Mr. Csajaghy's failure to disclose the existence of Sun River's insurance policies was not "substantially justified." The record amply reflects that Mr. Csajaghy was aware that Sun River had insurance policies, but that he elected not to examine the policies to ascertain the scope of coverage. No impediment prevented him from doing so, and thus, he is entirely culpable for that failure. As previously addressed by the Court, that failure worked actual (albeit unquantifiable) prejudice on the Defendants and on the Court system. Thus, because Mr. Csajaghy's failure to disclose the policies was not substantially justified, monetary sanctions were properly imposed on him under Rule 37(b)(2).

### B. Rule 37(c)

The Court finds that Rule 37(c) justifies the sanctions imposed. That rule provides that any party's failure to provide discovery required by Rule 26(a) or 26(e) may result in the imposition of sanctions, including the payment of the other side's relevant attorney fees. There is no dispute that Mr. Csajaghy was responsible for Sun River's initial failure to make complete Rule 26(a) disclosures. Mr. Pennington subsequently entered the case on Sun River's behalf, knowing that Sun River had insurance policies that had not been disclosed, yet Mr. Pennington did not take timely steps to supplement Sun River's disclosures as required by Rule 26(e), even after the Defendants expressly requested in writing in August 2012. Thus, both counsel engaged in conduct warranting sanctions under Rule 37(c).

Mr. Pennington and Mr. Csajaghy argue that any sanction under Rule 37(c) must run

9

against Sun River itself, not its counsel, citing cases such as *Grider v. Keystone Health Plan Central, Inc.*, 580 F.3d 119, 141 (3d Cir. 2009). There, the court held that the language in Rule 37(c) refers only to sanctions directed against a <u>party</u>, prohibiting the imposition of sanctions under that rule against <u>counsel</u>. *Citing Apex Oil Co. v. Belcher Co. of N.Y.*, 855 F.2d 1009, 1014 (2d Cir. 1988) *and Maynard v. Nygren*, 332 F.3d 462, 470 (7th Cir. 2003).

The 10th Circuit has not addressed this question of whether monetary Rule 37(c) sanctions can be imposed against counsel, rather than against a party, nor have most other courts. The few that have, such as *Grider, Apex*, or *Maynard*, have generally held that sanctions under Rule 37(c) may not be imposed against counsel. However, having carefully reviewed these cases, the Court finds them unpersuasive.

Both *Maynard* and *Grider* rely heavily on *Apex* for support, so this Court begins there. In *Apex,* the trial court awarded sanctions to the plaintiff based on the defendant's denial of four requests for admission. (Presumably, the defendant did not ultimately contest the four factual matters at trial.) The trial court assessed the sanctions against the defendant's attorneys, but on appeal, the Second Circuit reversed, finding that "by its express terms, Rule 37(c) applies only to a party." 855 F.2d at 1015. The court went on to note that "other subsections of Rule 37 expressly provid[e] for the imposition of sanctions against a party's attorney," making it ill-advised to construe Rule 37(c) to offer that same remedy tacitly. *Id.*

It is important to recognize that the court in *Apex* was interpreting a version of Rule 37(c) that has since been substantially amended. In 1993, Congress amended and restyled Rule 37 in several ways, including substantial revisions to Rule 37(c). At the time *Apex* was decided, the entirety of Rule 37(c) consisted of what is now found at Rule 37(c)(2), and to this day, that provision does indeed provide that "the party who failed to admit [shall] pay the reasonable

10

expenses" occasioned by that failure. However, the 1993 revision added a new provision to Rule 37(c), namely Rule 37(c)(1), which does not mimic rule 37(c)(2)'s sentence structure or grammar. Under the new Rule 37(c)(1), the Court "may order payment of the reasonable expenses caused by the [discovery] failure." The new rule's construction resorts to the passive voice, leaving the direct object of the verb "order" unspecified – precisely who is to make the ordered payment is not expressly stated. This stands in sharp contrast to Rule 37(c)(2)'s use of the active voice, making clear that "the party who failed to admit [shall] pay." Thus, *Apex* persuasively establishes that sanctions may not be imposed against counsel under Rule 37(c)(2), but that reasoning is neither on point nor persuasive with regard to this Court's consideration of sanctions against Mr. Pennington and Mr. Csajaghy under Rule 37(c)(1).

That same problem is apparent in *Maynard*. There, the plaintiff withheld an adverse medical report during discovery, producing it shortly before trial and only after the defendant had learned of its existence through other channels. The defendant sought monetary sanctions (among other things) jointly against the plaintiff and his counsel under Rule 37(c)(1), and the court granted that request. On appeal, the plaintiff's counsel challenged the sanction imposed against him personally, arguing that Rule 37(c) does not permit sanctions against counsel. Although decided after the 1993 change to the Rule, *Maynard* assesses the issue by examining *Apex*; *Insurance Benefit Administrators v. Martin*, 871 F.2d 1354, 1360 (7th Cir. 1989), another case decided prior to 1993; and the Advisory Committee's comments to the 1970 revision of Rule 37, all without ever acknowledging (much less quoting) the 1993 revision that created Rule 37(c)(1), the basis on which the trial court had imposed the sanction. This omission is curious, insofar as both *Apex* and *Martin* both involved sanctions for refusing to admit uncontested facts, the very conduct Rule 37(c)(2) is directed at, whereas *Maynard* involved the type of withholding

of discoverable information that the 1993 revision adding Rule 37(c)(1) was supposed to address. Given these curious deficiencies and reliance upon outdated precedent, this Court is reluctant to afford *Maynard* any persuasive value.

That leaves *Grider.*, a case in which the trial court sanctioned defense counsel under Rule 37(c)(1) for numerous discovery failures, and counsel appealed. The Court of Appeals acknowledged that the sanction in question was based on Rule 37(c)(1), and the court quoted the pertinent language. *Id.* at 140. It then stated that "we have not before had occasion to address the applicable scope of Rule 37(e)(1) [sic] sanctions," but observed that the Second and Seventh Circuits had, in *Apex* and *Maynard* respectively. *Id.* at 141. The court quoted briefly from those two cases, then went on to note that "the Wright & Miller treatise, citing *Apex*, also states that Rule 37 does not permit sanctions against the party's attorney." *Id.* at 141. The pertinent section of <u>Federal Practice and Procedure</u> citing *Apex* is § 2290[5] of the Third Edition, entitled "Failure to Admit Under Rule 36,"[6] which, unsurprisingly, addresses the operation of Rule 37(c)(2). Thus, much like *Maynard*, *Grider* apparently fails to recognize that the 1993 Amendments to Rule 37 significantly changed the operative language of the Rule, and that preexisting interpretations of Rule 37(c)(2)'s language are not necessarily persuasive in the context of Rule 37(c)(1). For these reasons, this Court finds the reasoning in *Apex*, *Maynard*, or *Grider* unpersuasive with regard to the question of whether sanctions can be imposed on counsel under Rule 37(c)(1).

---

[5] *Grider* cites to § 2990 of <u>Federal Practice and Procedure</u>. This appears to be a typographical error, as is its initial reference to sanctions being imposed under Rule 37(e)(1), rather than 37(c)(1), as there is no Rule 37(e)(1).

[6] As <u>Federal Practice and Procedure</u> states when discussing the new version of the Rule, "Rule 37(c)(1) authorizes the full panoply of Rule 37(b)(2) sanctions short of contempt." *Id.* at § 2289.1. It goes on to acknowledge that "Rule 37(c)(1) authorizes the court to require payment of reasonable expenses, including attorneys' fees," but notably, does <u>not</u> contend that such sanctions cannot be imposed on counsel or cite to cases such as *Apex* or *Grider*.

12

This Court finds that the proper interpretation of Rule 37(c)(1) warrants the conclusion that sanctions under that rule may be imposed upon counsel where appropriate. When defining how monetary sanctions can be imposed, the drafters of Rule 37(c)(1)(A) did not adopt the existing specific, active-voice language of that Rule (*i.e.* the language of the current Rule 37(c)(2)), instead choosing an unspecific, passive-voice direction to assess sanctions. Just as courts read statutes *in pari passu*, concluding that drafters intend the same phrase to have a consistent meaning each time it is used identically in a statute or rule, *see U.S. v. Ajoku*, 718 F.3d 882, 890 (9th Cir. 2013), the opposite conclusion is valid as well: the decision of the drafters to use a different construction in Rule 37(c)(1)(A) from the existing language of Rule 37(c)(2) suggests that the drafters intended the two sections to have different meanings. As noted above, the text of Rule 37(c)(1)(A) is broader and less specific than that of Rule 37(c)(2), suggesting that the power to sanction is broader under the former than under the latter. Moreover, the Court notes that the general trend in Rule 37 is to permit sanctions against counsel where the court deems appropriate. *See* Fed. R. Civ. P. 37(a)(5)(A), (a)(5)(B), (b)(2)(C). Although Rule 37(c)(2) stands in sharp contrast by its plain language, the Court is inclined to read the more broadly-written Rule 37(c)(1)(A) consistently with the general trend of the remainder of the Rule and the general trend towards granting trial courts flexibility in crafting suitable sanctions for discovery misconduct. *See generally* Advisory Committee notes to 1993 Amendment to Rule 37(c) ("the rule provides the court with a wide range of sanctions . . . [that] can be imposed when found to be warranted after a hearing").

Accordingly, in the absence of controlling or persuasive authority to the contrary, this Court finds that sanctions may be imposed against counsel under Rule 37(c)(1)(A) if, in its discretion, the Court deems appropriate. Here, for the reasons previously stated by the

Magistrate Judge in his Recommendation and the Court in adopting that Recommendation in part, the Court finds that Mr. Pennington and Mr. Csajaghy, as the counsel who were aware of the existence of the insurance policies but who chose not to disclose or even examine them, are the proper subjects of a sanction requiring payment of the Defendants' attorney fees in bringing a motion for sanctions. The misconduct was unambiguously that of Mr. Pennington and Mr. Csajaghy, not that of Sun River, and thus, the sanction should be borne by them.

### C. Remaining contentions

The sole remaining argument by Mr. Csajaghy is that the Court entered the sanction against him without first giving him an opportunity to be heard. Mr. Csajaghy withdrew as counsel for Sun River on October 16, 2012, shortly after the failure to disclose the insurance policies came to light.

The Court acknowledges that Mr. Csajaghy was no longer counsel to Sun River at the time of the Final Pretrial Conference, and thus, was not present when the Court elected to convert the Magistrate Judge's recommendation of default against Sun River to a monetary sanction against Sun River's counsel. However, the Court is not convinced that Mr. Csajaghy has been deprived of a meaningful opportunity to be heard.

Mr. Csajaghy testified in person at the evidentiary hearing convened by the Magistrate Judge on the Defendants' motion for sanctions, and thus, had a full opportunity to present his version of events. His testimony at that hearing also acknowledged his contemporaneous awareness of the Defendants' motion for sanctions (which included all sanctions that applied.) Although that motion did not request sanctions directed at Mr. Csajaghy personally, it did request relief under Rule 37(b)(2), which includes a provision for the mandatory award of attorney fees, possibly against counsel personally. Fed. R. Civ. P. 37(c)(2)(B). Admittedly, the

Magistrate Judge did not recommend sanctions against Mr. Csajaghy personally, and thus, Mr. Csajaghy arguably might not have anticipated that the Court could adopt the Recommendation in part, but shift the focus of sanctions to counsel. Thus, it may be fair to say that, when converting the recommended sanction to Mr. Pennington and Mr. Csajaghy personally, the Court deprived Mr. Csajaghy of the opportunity to be heard on the legal aspects of that decision.

However, were the Court to vacate the award of sanctions against Mr. Csajaghy and reopen the matter to allow him an opportunity to be heard on the legal issues, the situation would be precisely what is presented now. Mr. Csajaghy has asked to be heard and has presented certain arguments as to the legal propriety of awarding sanctions, and as set forth above, the Court has considered and rejected those arguments. It is not clear whether Mr. Csajaghy's request to be heard is intended to encompass only those issues raised in his motion, or whether he has held back additional factual or legal arguments in anticipation of a further opportunity to present them. Mr. Csajaghy's motion suggests that he desires "the opportunity to advise the court in detail regarding the circumstances leading to Defendants' motion," but does not elaborate, much less make a proffer or supply an affidavit attesting to the relevant matters. Certainly, the "circumstances leading to Defendants' motion" were explored in detail in Mr. Csajaghy's testimony before the Magistrate Judge, both as to Mr. Csajaghy's initial discussions with Mr. Pennington about the existence of the policies and Mr. Csajaghy's correspondence with the Defendants' counsel in August and October 2012. Thus, it is unclear, even at this time, what additional information or arguments Mr. Csajaghy would present were he to be given an additional opportunity to be heard.

Mr. Csajaghy has now had an opportunity to be heard on at least two occasions, at least once as to the facts (the hearing before the Magistrate Judge), and once as to the law (the instant

15

motion). *See generally* Advisory Committee comments to 1993 Amendments to Rule 37(a)(4) ("'affording an opportunity to be heard' [makes] clear that the court can consider such questions on written submissions as well as on oral hearings"). Having now afforded him that opportunity, the Court finds the situation unchanged from its prior observations: Mr. Csajaghy unambiguously violated Rule 26(a), is fully culpable for that violation, the violation worked a financial prejudice on the Defendants in the form of attorney fees incurred in seeking sanctions, and it is appropriate to hold Mr. Csajaghy, rather than Sun River, personally responsible for those financial losses because the failure was the result of Mr. Csajaghy's failure to review and assess known information, rather than concealment of that information from him by a client. Accordingly, the Court has reconsidered the assessment of sanctions against Mr. Csajaghy in light of his request to be heard, and the Court has considered the arguments raised in his motion, but upon such reconsideration, nevertheless finds that the imposition of sanctions against Mr. Csajaghy is appropriate on the terms previously identified.

### D.  Entry of judgment

The Defendants request that the Court reduce its sanction to a judgment against Mr. Pennington and Mr. Csajaghy, so as to expedite the collection of the sanction. Mr. Pennington and Mr. Csajaghy did not respond to this motion, and in the absence of an objection, the Court grants the motion.

For the foregoing reasons, the Plaintiff's Motion for Reconsideration **(# 325)** is **GRANTED IN PART**, insofar as the Court has reconsidered its award of sanctions in light of the arguments raised therein, and **DENIED IN PART**, insofar as, upon such reconsideration, the Court nevertheless finds that the sanctions were properly imposed. The Defendants' motion for judgment **(# 326)** is **GRANTED** and the Clerk of the Court shall enter in favor of the Defendants

and against Mr. Pennington and Mr. Csajaghy, jointly and severally, in the amount of $ 20,435.

Dated this 30th day of July, 2014.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge

17